### STATE *v.* GWINN.

1. In the trial of a party charged with crime, it is for the jury alone to determine what force and effect should be given to the evidence of tracks and threats.
2. Under the statute (*Gen. Stat.*, § 2480), which declares that "the malicious and wilful setting fire to or burning of any barn, stable, &c., shall be deemed arson," the indictment need not refer to the location of the stable alleged to have been burned, nor charge that it was within the curtilage of a dwelling house; and where matters of location and appurtenance are alleged in an indictment under this statute, they may be disregarded as surplusage.[1]

Before KERSHAW, J., Anderson, October, 1883.

The opinion fully states the case.

*Mr. J. C. C. Featherston,* for appellant.

*Mr. G. G. Wells,* for the solicitor, contra.

February 13, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. John Gwinn was convicted of arson at the October term of the court, 1883, for the County of Anderson, and sentenced to be imprisoned in the state penitentiary "for life." The indictment charged that "John Gwinn, on the eleventh day of September, in the year of our Lord one thousand eight hundred and eighty-three, with force and arms at Anderson

---

[1] See next case *post,* page 150, State v. Moore (3).—REPORTER.

court house, in the County of Anderson and State aforesaid, did unlawfully, wilfully, and maliciously set fire to and burn the stable and barn of Jasper N. Pool, within two hundred yards of, and appurtenant to, a dwelling house of Jasper N. Pool, wherein Martha Pool habitually slept, whereby such dwelling house was endangered, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State aforesaid."

The defendant made motions for a new trial and in arrest of judgment, which being refused, he appealed at the time to this court, but the appeal was suspended to allow a motion for a new trial to be made below, upon the ground of subsequently discovered evidence. That motion having also failed, the case was heard here upon the original appeal, in which motions were made for a new trial and in arrest of judgment on the following grounds:

1. "Because his honor erred in refusing a new trial when the evidence showed that the 'dwelling house,' of which the barn and stable were alleged to be appurtenant and within two hundred yards, was not the dwelling house of Jasper N. Pool, but was occupied by another—one Martha Pool.

II. "Because the evidence failed to show by what right Martha Pool occupied said house, whether as tenant of Jasper N. Pool, or otherwise.

III. "Because there was no evidence that the barn and stable were 'appurtenant' to either the house occupied by Martha Pool or the dwelling house of Jasper N. Pool, the latter being at the distance of half a mile.

IV. "Because the evidence showed that there was a public highway running between the barn and stables and the house occupied by Martha Pool.

V. "Because there was no proof of the *corpus delicti*, nor of any fact showing that the burning was the result of criminal agency.

VI. "Because, as matter of law, tracks without any peculiarity, and threats, are not corroborative.

VII. "Because it is respectfully submitted that his honor erred in not arresting the judgment, when it appeared, (1) that

the indictment was fatally defective at common law, in that it does not allege the burnt building to have been within 'the curtilage.' (2) That it was fatally defective under the statute, in that it failed to show on its face how Martha Pool occupied the house wherein she slept, whether as proprietor, tenant, watchman, clerk, laborer, or simply as one lodged there with a view to the protection of the property. (3) That it was fatally defective under the statute, in that it did not allege that the dwelling house of Martha Pool was endangered. (4) That it was fatally defective in that it alleged the dwelling house to have been the property of Jasper N. Pool, and yet alleged it in such manner as to justify the inference that he did not dwell therein."

The fifth and sixth exceptions complain merely as to alleged insufficiency of proof, which we cannot consider. It was for the jury alone to determine what force and effect should be given to the evidence of threats, tracks, &c. All the other exceptions relate to the form of the indictment, and what proof was necessary to sustain it.

We do not understand that this was an indictment for arson at the common law. Both its terms, "contrary to the form of the statute in such case made and provided," and the punishment imposed, show that it was under the statute. But assuming this, it is claimed for the appellant, that it was under section 2483 of the General Statutes, which declares that "with respect to the crime of burglary and arson, and to all criminal offences, which are constituted or aggravated by being committed in a dwelling house, any house, out-house, apartment, &c., * * in which there sleeps a proprietor, tenant, watchman, clerk, laborer, or person who lodges there with a view to the protection of property, shall be deemed a dwelling house; and of such dwelling house, or any other dwelling house, all houses, out-houses, buildings, sheds, and erections, which are within two hundred yards of it, and are appurtenant to it, or to the same establishment, of which it is an appurtenance, shall be deemed parcels," &c.

In the view that the indictment was under this section, it was contended that it was fatally defective in several particulars, viz., that it did not distinctly allege that the house in which Martha Pool slept was either her "dwelling house," or that of Jasper N.

Pool; nor show on its face how Martha Pool occupied it, whether as proprietor, tenant, watchman, clerk, laborer, or simply as one lodged there with a view to the protection of the property; and that proof showing that the house was the property of Jasper N., but occupied by Martha, was not sufficient to make it the "dwelling house" of either, in the sense of the statute. As we understand it, this section was not intended to originate any new offence, but simply to change the proof necessary and thereby to enlarge the field of certain well known offences, already in existence, by declaring, as to them, what shall be deemed a "dwelling house" and an appurtenance or parcel thereof. It is not necessary here to consider this section.

The indictment in this case may be considered as framed under section 2480 of the General Statutes, which provides that "the wilful and malicious setting fire to or burning any court house or other public building, whether owned by the State or a corporation, or a building owned by an individual or individuals, and kept or let for public meetings or exhibitions, barn, stable, coach-house, gin-house, storehouse, ware-house, grist or saw mill, railroad depot, coach or cotton factory, or other house used for manufacturing purposes, of whatever name or kind, or setting fire to or burning any house habitually used for public religious worship, shall be deemed arson, whether the setting fire to or burning be in the day or night time; and the person setting fire to or burning any such house as aforesaid, and the aiders, abettors, and accessories before the fact, shall," &c. This provision certainly created a new statutory offence; in regard to which it is only necessary that the indictment should charge that one of the description of houses named was set fire to and burned, without any reference whatever to its location as being within two hundred yards or the curtilage of a "dwelling house."

All the statements of this indictment in reference to Martha Pool and the house in which she habitually slept, may be disregarded as surplusage, and that would leave in it the simple charge that "John Gwinn, on the eleventh day of September, in the year of our Lord one thousand eight hundred and eighty-three, with force and arms at Anderson court house, in the County of Anderson and State aforesaid, did unlawfully, wilfully, and mali-

ciously set fire to and burn the stable and barn of Jasper N. Pool, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State aforesaid," which is as full as the terms of the statute require. "The general rule is, that mere surplusage will not vitiate, as when an indictment for an offence at common law concludes *contra formam statuti.*" *State* v. *Wimberly,* 3 *McCord,* 193, citing 1 *Cowp.,* 683; 5 *Durn. & East.,* 162.

The judgment of this court is that the judgment of the Circuit Court be affirmed.